IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                   :
                                                   :
UNIVERSAL LIFE CHURCH                              :
MONASTERY STOREHOUSE, a                            :   Case No. 2:21-cv-618
Washington non-profit corporation,                 :
                                                   :
                                                   :
                                                   :   COMPLAINT FOR INJUNCTIVE
                  Plaintiff,                       :   AND DECLARATORY RELIEF
                                                   :
         -against-                                 :
                                                   :
                                                   :
MICHAEL MCGEEVER, in his official                  :
capacity as Director of Court Records for          :
Allegheny County, Pennsylvania; and                :
PATRICIA CAPOZOLI, in her official                 :
capacity as Wills and Orphans' Court               :
Division Manager for Allegheny County,             :
Pennsylvania,                                      :
                                                   :
                  Defendants.                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Introduction**

1.  This is an action for declaratory and injunctive relief to enjoin the discriminatory implementation of 23 Pa. Cons. Stat. Ann. § 1503, which violates the rights of Plaintiff Universal Life Church Monastery Storehouse ("Plaintiff" or "ULC Monastery" or "the Church") and its ministers under the First and Fourteenth Amendments to the U.S. Constitution.

2.  ULC Monastery is a non-denominational religious organization that champions religious freedom, social justice, and spiritual expression of all kinds. Its ecclesiastical belief system is derived from the fundamental belief that we are all children of the same universe. To further its mission, ULC Monastery ordains those who feel called to be a minister of the Church, and many who receive ordination choose to minister by officiating weddings.

3.     Pennsylvania law authorizes "[a] minister, priest or rabbi of any regularly established church or congregation" to solemnize marriages. 23 Pa. Cons. Stat. Ann. § 1503. Defendants are responsible for the issuance and recording of marriage licenses and certificates in Allegheny County, Pennsylvania. Defendants have used the powers of their office to proclaim that ministers of ULC Monastery may not solemnize legal marriages. The intent and impact of this practice is to discourage ULC Monastery ministers from exercising rights afforded to ministers of other churches and religions.

4.     Defendants' apparent policy of discrimination unconstitutionally prefers certain religions or religious denominations over others and burdens ULC Monastery's and its ministers' free exercise of religion. To the extent Defendants are correct that 23 Pa. Cons. Stat. Ann. § 1503 bars ULC Monastery ministers from solemnizing marriages while granting that benefit to ministers of other religious denominations, the statute is unconstitutional.

5.     The Constitution is clear: "one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). But Defendants—in reliance on 23 Pa. Cons. Stat. Ann. § 1503—have adopted just the sort of religious favoritism the First and Fourteenth Amendments prohibit. ULC Monastery respectfully requests that the Court enjoin this discrimination.

## Parties

6.     ULC Monastery is a non-denominational religious organization and a Washington non-profit corporation, with its headquarters in Seattle.

7.     Michael McGeever is the duly appointed and serving Director of the Department of Court Records for Allegheny County, Pennsylvania. He is sued in his official capacity.

8. Patricia Capozoli is the duly appointed and serving Division Manager of the Wills and Orphans' Court Division of the Department of Court Records for Allegheny County, Pennsylvania. She is sued in her official capacity.

## Jurisdiction and Venue

9. This action arises under the United States Constitution, particularly the First and Fourteenth Amendments, as well as the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988.

10. This Court has original jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1343.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b), because events giving rise to the claims occurred within this District and Defendants' offices are within this District.

## Factual Allegations

### ULC Monastery's Ministry and Outreach

12. ULC Monastery is a non-denominational church formed to advance religious faith and freedom with the following core tenets: (1) a person should always strive to do that which is right, and (2) all people are naturally endowed with the rights to practice their beliefs, regardless of what those beliefs are, as long as they do not infringe the rights of others and are within the law. ULC Monastery believes that spiritualty, theology, and religion are parts of man's mythology from the beginning of time. ULC Monastery's ministry includes support of charitable organizations, advocacy for marriage equality, and other social justice causes.

13. ULC Monastery registered as a Washington non-profit corporation in 2006 and is headquartered in Seattle.

14. ULC Monastery embraces the principle that those who feel so called can become ministers through the Church. ULC Monastery ordains ministers over the internet for free, and it

sends credentials to ministers by mail.  ULC Monastery expects its ministers to conduct themselves according to the Church's two core tenets, but ULC Monastery rejects the idea that a Church's members should be made to obey the commands of any central leadership structure and embraces the equality of all individuals.  The Church believes its ministers may keep their own God or share it with others.  ULC Monastery's ministers perform religious rites and ceremonies, including baptisms, marriages, and funerals around the world.

15. Through its website, ULC Monastery offers its ministers resources such as training and assistance in how to officiate weddings, deliver sermons, or start a church location. ULC Monastery also maintains a private social network online where its ministers can connect. The Church invites ministers to contribute to its site as part of the Church's effort to build and maintain a global faith community by using the collaborative power of cyberspace.  The Church publishes a blog, which includes sermons written by ULC Monastery ministers, and where many commenters participate in discussions of religion, spirituality, and social justice.  ULC Monastery connects with its ministers through a weekly newsletter called "The Visionary," which highlights the role of religion and spirituality in society.

16. ULC Monastery strives to fulfill the spiritual needs of its global network of members and ministers by offering a wealth of information, a variety of services, and networking opportunities. The Church views this communion and fellowship of its many scattered ministers as just as valid a form of worship as the weekly services held in some of the world's more traditional religious institutions.

### Pennsylvania's Marriage Ordination Law

17. Pennsylvania regulates by statute the persons who may perform a valid marriage ceremony.  Specifically, 23 Pa. Cons. Stat. Ann. § 1503 provides (underlining added):

**(a) General rule.**--The following are authorized to solemnize marriages between persons that produce a marriage license issued under this part:

(1) A justice, judge or magisterial district judge of this Commonwealth.

(2) A former or retired justice, judge or magisterial district judge of this Commonwealth who is serving as a senior judge or senior magisterial district judge as provided or prescribed by law . . . .

(3) An active or senior judge or full-time magistrate of the District Courts of the United States for the Eastern, Middle or Western District of Pennsylvania.

(3.1) An active, retired or senior bankruptcy judge of the United States Bankruptcy Courts for the Eastern, Middle or Western District of Pennsylvania who is a resident of this Commonwealth.

(4) An active, retired or senior judge of the United States Court of Appeals for the Third Circuit who is a resident of this Commonwealth.

(5) A mayor of any city or borough of this Commonwealth.

(5.1) A former mayor of a city or borough of this Commonwealth . . . .

<u>(6) A minister, priest or rabbi of any regularly established church or congregation.</u>

**(b) Religious organizations.**--Every religious society, religious institution or religious organization in this Commonwealth may join persons together in marriage when at least one of the persons is a member of the society, institution or organization, according to the rules and customs of the society, institution or organization.

**(c) Marriage license needed to officiate.**--No person or religious organization qualified to perform marriages shall officiate at a marriage ceremony without the parties having obtained a marriage license issued under this part.

18. Those who receive ordination through the Church are "minister[s] . . . of any regularly established church or congregation." State court decisions have created confusion, however, as to whether 23 Pa. Cons. Stat. Ann. § 1503 authorizes discrimination against ULC Monastery ministers.

19. In *Heyer v. Hollerbush*, No. 2007-50-002132-Y08 (C.P. York, 2007), the parties sought a declaration that their marriage was invalid, arguing that the ULC Monastery minister who solemnized the wedding had no authority to do so under 23 Pa. Cons. Stat. Ann. § 1503. The York County Court of Common Pleas agreed and invalidated the marriage. Neither the minister nor ULC Monastery were parties to the case.

20. In *O'Neill v. O'Neill*, No. 08-01620-29-1 (C.P. Bucks, 2008), the Bucks County Court of Common Pleas reached the opposite conclusion and held that a marriage solemnized by a ULC Monastery minister was valid. The court found that it is "not for us to determine in this context how any faith chooses to ordain its leaders and propagate its beliefs."

21. The conflicting interpretations of Pennsylvania law have left ULC Monastery ministers uncertain as to whether 23 Pa. Cons. Stat. Ann. § 1503 bars them from solemnizing marriages in Pennsylvania.

**Pennsylvania's Marriage Licensing Procedures**

22. Pennsylvania law delegates to counties the responsibility of issuing marriage licenses and recording marriage certificates. *See* 23 Pa. Cons. Stat. Ann. §§ 1104, 1106. In Allegheny County, the Wills and Orphans' Court Division of the Department of Court Records ("Wills/Orphans' Court Division") is responsible for issuing marriage licenses and recording marriage certificates.

23. Officials such as Defendants may issue a marriage license only "upon written and verified application made by both of the parties intending to marry." 23 Pa. Cons. Stat. Ann. § 1302(a). The application "shall contain" information identifying the parties to the marriage, information related to the applicants' parents, whether either applicant has been married before,

and "[a]ny other facts necessary to determine whether a legal impediment to the proposed marriage exists."  23 Pa. Cons. Stat. Ann. § 1302(b).

24. County officials "shall" issue a license only "if it appears from properly completed applications on behalf of each of the parties to the proposed marriage that there is no legal objection to the marriage."  23 Pa. Cons. Stat. Ann. § 1307.

25. 23 Pa. Cons. Stat. Ann. § 1310 provides that the license must be in "substantially the following form":

> Commonwealth of Pennsylvania
> ss:
> No. ....
> County of (name)
> To any person authorized by law to solemnize marriage:
> You are hereby authorized to join together in holy state of matrimony, according to the laws of the Commonwealth of Pennsylvania, (name) and (name).
> Given under my hand and seal of the Court of Common Pleas of (name), at (city, borough or town), on (date).
> Signed
> (Official Title)

26. The license issued by a county includes two certificates.  The person solemnizing the wedding must sign one and give it to the married parties, and sign the other for return to the county "for recording" within ten days.  23 Pa. Cons. Stat. Ann. § 1504.  By signing the certificate, the wedding officiant must certify that the couple was "by me united in marriage."  23 Pa. Cons. Stat. Ann. § 1510.

27. After the decision in *Heyer v. Hollerbush*, No. 2007-50-002132-Y08 (C.P. York, 2007), counsel for the Register of Wills and Clerks of Orphans' Court Association of

Pennsylvania (of which Defendants are members) advised the Association's members to refuse to accept any marriage certificates signed by an officiant who had been ordained online.[1]  On information and belief, counsel for the Association later rescinded this guidance.

28.     Ministers who certify that they performed a valid marriage without the authority to do so may face criminal prosecution.  A person is guilty of a second degree misdemeanor if he or she "makes [or] presents . . . any record [or] document . . . knowing it to be false" when the record is "received or kept by[] the government for information or record."  18 Pa. Cons. Stat. Ann. § 4911.  A person is also guilty of a second degree misdemeanor if he or she "makes any written false statement which he does not believe to be true" with "intent to mislead a public servant in performing his official function."  18 Pa. Cons. Stat. Ann. § 4904.

### Rev. Anthony Priore

29.     Rev. Anthony Priore was ordained by ULC Monastery on May 3, 2017.  He resides in Allegheny County, Pennsylvania.

30.     Rev. Priore was ordained while in college.  He learned of ULC Monastery through a friend and a professor, who were also ordained ministers of ULC Monastery and who described ordination as a meaningful way to connect with and help others.

31.     Years later, close friends of Rev. Priore asked that he perform their wedding, which was scheduled for May 1, 2021.  Rev. Priore was honored by the request and agreed.

32.     In approximately the middle of February, 2021, Rev. Priore called the Wills/Orphans' Court Division to ask what he needed to do to perform a valid wedding.  He introduced himself as a minister of ULC Monastery, and the representative who answered the

---

[1] Scott Kraus, *"'Till death do us part"? Not really, if your minister was ordained online—York court ruling invalidates a marriage and impact could spread*, The Morning Call, Sep. 15, 2007, available at https://www.mcall.com/news/mc-xpm-2007-09-15-3772304-story.html.

phone stated that "we don't recognize" ULC Monastery or "online" churches. The representative told Rev. Priore that the couple could get married at the courthouse, and he could perform a ceremony for "show."

33.     Rev. Priore told the couple that, based on his conversation with the Wills/Orphans' Court Division, he was concerned that he could not legally perform the marriage in Pennsylvania. To avoid any legal problems while ensuring that their minister of choice could solemnize the marriage, the couple relocated their planned wedding to West Virginia. Rev. Priore officiated the wedding in West Virginia on May 1, 2021. Rev. Priore hopes to solemnize weddings for others in the future but fears that he cannot offer that service in Allegheny County after his conversation with the Wills/Orphans' Court Division.

### Rev. Joel Suen

34.     Rev. Joel Suen was ordained by ULC Monastery on May 2, 2018. He resides in Allegheny County, Pennsylvania.

35.     Rev. Suen called the Wills/Orphans' Court Division in August of 2019 to ask what he needed to do to perform a valid wedding as a minister. The representative who answered immediately asked what church had ordained Rev. Suen. He responded that he was ordained by ULC Monastery, and the representative stated "we don't recognize that." The representative told Rev. Suen that he could not sign a marriage certificate. Rev. Suen asked if this was the representative's personal opinion or the official stance of Allegheny County, and the representative stated, "I represent Allegheny County." The representative alluded to a requirement that ministers have a "physical church" to be able to solemnize valid marriages. Rev. Suen asked that the representative confirm this position in writing, but the representative refused.

36.     Rev. Suen has received multiple requests from close family and friends to perform wedding ceremonies.  He performed one ceremony in New York, where he signed the marriage license confirming he had solemnized the marriage.  In Pennsylvania, however, he has spoken at three wedding ceremonies—based on the couples' request that he act as officiant—but has not legally solemnized or signed a marriage certificate for any because of the position of the Wills/Orphans' Court Division.  Rev. Suen wishes to legally solemnize marriages in Pennsylvania, as ministers of other denominations and religions are permitted to do, but he fears the marriages will be invalid.

### Rev. Mark Lisovich

37.     Rev. Mark Lisovich was ordained by ULC Monastery on April 28, 2019.  He resides in Fayetteville County.

38.     Rev. Lisovich grew up in the Catholic Church, but he believes the calling of ministry should be open to all, which drew him to ULC Monastery.

39.     In 2020, Rev. Lisovich's goddaughter asked him to perform her wedding ceremony in Allegheny County.  Rev. Lisovich called the Wills/Orphans' Court Division to ask what he needed to do to perform a valid wedding as a minister.  He stated that he was an ordained reverend with ULC Monastery.  The representative who answered the phone responded, "Oh, you're one of those."  Rev. Lisovich asked, "One of what?"  The representative responded: "One of those cult people."

40.     The representative was adamant that Rev. Lisovich could not solemnize legal marriages as a minister of ULC Monastery.  The representative indicated that Rev. Lisovich must have a brick-and-mortar church to solemnize marriages.

41. Rev. Lisovich was stunned and upset. He told his goddaughter that, regrettably, he couldn't perform the ceremony. She was distraught and crying. Rev. Lisovich's goddaughter was married by a minister of a different church.

42. Rev. Lisovich has performed baptisms as a minister, and he wishes to perform other religious ceremonies, including weddings, in Allegheny County and other counties in Pennsylvania.

### Rev. Douglas Kunst

43. Rev. Douglas Kunst was ordained by ULC Monastery on September 9, 2020. He resides in Allegheny County, Pennsylvania.

44. Rev. Kunst planned to solemnize his son's wedding in November, 2020. In April or May of 2020, Rev. Kunst called the Wills/Orphans' Court Division to ask about the process required for an ordained minister to perform a wedding. Rev. Kunst noted that he was ordained by ULC Monastery, and the representative from the Wills/Orphans' Court Division stated that ULC Monastery ministers may not solemnize valid marriages in Pennsylvania. Rev. Kunst waited approximately two months before calling the Wills/Orphans' Court Division again. The representative he spoke to again took the position that Rev. Kunst could not solemnize marriages in Pennsylvania because he was ordained by ULC Monastery.

45. Because of his conversations with the Wills/Orphans' Court Division, Rev. Kunst did not perform his son's wedding. Rev. Kunst would like to perform weddings in the future but fears any weddings he performs will be invalid.

### Rev. Paul Gentry Beam

46. Rev. Paul Gentry Beam was ordained by ULC Monastery on October 22, 2019. He resides in Allegheny County, Pennsylvania.

47. Rev. Beam planned to solemnize his stepdaughter's wedding in September, 2020. In summer of 2020, Rev. Beam called the Wills/Orphans' Court Division to ask about the process he would need to follow to solemnize a legal wedding. Rev. Beam identified himself as a minister of ULC Monastery, and the representative who answered the phone said, "We don't accept that." The representative stated that "we don't accept" ministers who "gained ministry online."

48. Rev. Beam felt he could not solemnize his stepdaughter's marriage, and as a result, his stepdaughter had someone else perform the wedding Florida. The couple had a celebration with friends and family in Allegheny County after being married in Florida, and Rev. Beam could only speak at the ceremony as "officiant" without signing a certificate or legally binding the couple.

49. Rev. Beam would like to serve others by solemnizing marriages and would like to be available to family and friends to serve other functions of a minister, such as presiding over funerals. After his conversations with the Wills/Orphans' Court Division, however, Rev. Beam stopped trying to use his ordination for any purpose.

## COUNT I

**Violation of the Establishment Clause of the U.S. Constitution**

50. Plaintiff re-alleges and incorporate all preceding paragraphs, as if fully set forth herein.

51. The First Amendment—as incorporated and applied to the states through the Fourteenth Amendment—provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I.

52. The "clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982).

53. On information and belief, Defendants have adopted an apparent policy and practice of discouraging and chilling the religious practice of ULC Monastery ministers by proclaiming that the Church's ministers have no legal authority to solemnize marriages. By discouraging only certain ministers or disfavored religious practices, this policy prefers certain religions or religious denominations over others in contravention of the Establishment Clause.

54. To the extent 23 Pa. Cons. Stat. Ann. § 1503 bars ULC Monastery ministers from solemnizing weddings in Pennsylvania while permitting ministers of other religions or religious denominations to do so, the statute is unconstitutional because it prefers certain religions or religious denominations over others in contravention of the Establishment Clause.

55. No compelling governmental interest supports discrimination against ULC Monastery ministers or the policy of recognizing ordinations from some religions but not others.

56. Defendants' interpretation and application of 23 Pa. Cons. Stat. Ann. § 1503 further contravenes the Establishment Clause because it serves no secular purpose, lacks a primary effect other than to advance or inhibit religion, and fosters an excessive government entanglement with religion. *See Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971).

57. Defendants' actions in implementing 23 Pa. Cons. Stat. Ann. § 1503 are done under color of state law, and are in derogation of Plaintiff's rights guaranteed under federal law, and therefore violate 42 U.S.C. § 1983, entitling Plaintiff to declaratory and injunctive relief, as well as costs and attorneys' fees as provided by 42 U.S.C. § 1988.

## COUNT II

### Violation of the Free Exercise Clause of the U.S. Constitution

58. Plaintiff re-alleges and incorporate all preceding paragraphs, as if fully set forth herein.

59. The First Amendment—as incorporated and applied to the states by through the Fourteenth Amendment—provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I.

60. Many of ULC Monastery's ministers choose to minister by solemnizing marriages, and 23 Pa. Cons. Stat. Ann. § 1503, as interpreted and implemented by Defendants, burdens ULC Monastery's and its members' free exercise of religion by depriving them of the right to solemnize marriages. Such restrictions on who may solemnize marriages are arbitrary and not supported by any rational basis.

61. Defendants' apparent policy and practice of discouraging and chilling the religious practice of ULC Monastery ministers by proclaiming that the Church's ministers have no legal authority to solemnize marriages is not neutral and not of general application because its purpose is to confer a benefit on certain religious groups and not others. As a result, the challenged policy is subject to the most rigorous of scrutiny. This practice is not supported by any compelling governmental interest.

62. To the extent 23 Pa. Cons. Stat. Ann. § 1503 bars ULC Monastery ministers from solemnizing weddings in Pennsylvania while permitting ministers of other religions or religious denominations to do so, the statute is unconstitutional because is not neutral and not of general application because its purpose is to confer a benefit on certain religious groups and not others.

As a result, the statute is subject to the most rigorous of scrutiny and is not supported by any compelling governmental interest.

63. Defendants' actions in implementing 23 Pa. Cons. Stat. Ann. § 1503 are taken under color of state law, and are in derogation of Plaintiff's rights guaranteed under federal law, and therefore violate 42 U.S.C. § 1983, entitling Plaintiff to declaratory and injunctive relief, as well as costs and attorneys' fees as provided by 42 U.S.C. § 1988.

## COUNT III

### Violation of the Equal Protection Clause of the U.S. Constitution

64. Plaintiff re-alleges and incorporate all preceding paragraphs, as if fully set forth herein.

65. The Equal Protection Clause of the Fourteenth Amendment provides that states may not "deny any person within [their] jurisdiction equal protection of the laws." U.S. Const. amend. XIV, § 1.  The Equal Protection Clause protects from intentional discrimination against similarly situated individuals or discrimination implicating fundamental rights, such as religion. Intentional discrimination based on religious affiliation must survive heightened equal protection review.

66. Defendants' apparent policy of discouraging and chilling the religious practice of ULC Monastery ministers is intentionally discriminatory because it is meant to single out members of a certain religion or religious denomination.

67. To the extent 23 Pa. Cons. Stat. Ann. § 1503 bars ULC Monastery ministers from solemnizing weddings in Pennsylvania while permitting ministers of other religions or religious denominations to do so, the statute is intentionally discriminatory because it is meant to single out members of a certain religion or religious denomination.

68. This discrimination against ULC Monastery and its ministers is not supported by any compelling governmental interest or by any rational basis.

69. Defendants' actions in implementing 23 Pa. Cons. Stat. Ann. § 1503 are taken under color of state law, and are in derogation of Plaintiff's rights guaranteed under federal law, and therefore violate 42 U.S.C. § 1983, entitling Plaintiff to declaratory and injunctive relief, as well as costs and attorneys' fees as provided by 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that the Court grant the following relief:

a. A judgment declaring that Defendants' apparent policy and practice of discouraging and chilling the religious practice of ULC Monastery ministers is unconstitutional under the U.S. Constitution;

b. A judgment declaring 23 Pa. Cons. Stat. Ann. § 1503 is unconstitutional under the U.S. Constitution to the extent the statute prevents ULC Monastery ministers from solemnizing marriages while allowing ministers of other religions or denominations to do so;

c. A permanent injunction prohibiting Defendants from refusing recognize the validity of marriages solemnized by ULC Monastery ministers, from deterring or preventing any ULC Monastery minister from performing a marriage, and from otherwise applying 23 Pa. Cons. Stat. Ann. § 1503 in a manner that discriminates against ULC Monastery or its ministers;

d. A judgment awarding Plaintiff its costs and attorneys' fees; and

e. Such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Zachary N. Gordon
Patrick K. Cavanaugh
PA ID 72960
Zachary N. Gordon
PA ID 318808
**DEL SOLE CAVANAUGH STROYD LLC**
Three PPG Place, Suite 600
Pittsburgh, PA 15222
412-261-2395 (phone)
pcavanaugh@dscslaw.com
zgordon@dscslaw.com

Bruce E.H. Johnson (*pro hac vice pending*)
Ambika Kumar Doran (*pro hac vice pending*)
Robert E. Miller (*pro hac vice pending*)

DAVIS WRIGHT TREMAINE LLP
920 Fifth Ave., Ste 3300
Seattle, WA 98104-1610
(206) 622-3150 (phone)
(206) 757-7700 (fax)
brucejohnson@dwt.com
ambikadoran@dwt.com
robertmiller@dwt.com

*Attorneys for Plaintiff Universal Life Church Monastery Storehouse*