IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNIVERSAL LIFE CHURCH MONASTERY STOREHOUSE. A Washington non-profit corporation,<br><br>   Plaintiff,<br><br> v.<br><br>MICHAEL MCGEEVER, in his official capacity as Director of Court Records for Allegheny County, Pennsylvania; and PATRICIA CAPOZOLI, in her official capacity as Wills and Orphans' Court Division Manager for Allegheny County, Pennsylvania,<br><br>   Defendants. | 2:21-cv-618-NR |

## MEMORANDUM ORDER

Plaintiff Universal Life Church Monastery Storehouse alleges that Defendants Michael McGeever, the Director of Court Records for Allegheny County, and Patricia Capozoli, the Wills and Orphans' Court Division Manager for Allegheny County, or their employees, told its ministers that they may not solemnize marriages in Pennsylvania. In response, these ministers have not performed wedding ceremonies out of fear that any marriages they tried to solemnize might later be considered invalid. Universal seeks declaratory and injunctive relief to end the cloud of uncertainty that hangs over its ministers' ability to perform this religious rite.

Defendants ask the Court to dismiss the case. ECF 18. Defendants assert that there is no live case or controversy, and that Universal has failed to state a *Monell* claim under 42 U.S.C. § 1983. After careful consideration, and applying the familiar

and well-settled standard of review for a Rule 12 motion, the Court denies Defendants' motion for two reasons.

First, a live case or controversy exists. Universal has alleged that its ministers are being singled out as "illegitimate" and unworthy of solemnizing marriages in the Commonwealth. According to Universal, this "singling out" has chilled the exercise of its ministers' First Amendment rights. This harm is ongoing and exists whether Defendants' offices, in fact, refuse to issue licenses for marriages performed by Universal's ministers.

Second, *Monell* does not apply. That's because Universal is bringing claims against Defendants as state officials administering Pennsylvania's marriage statutes. *Monell* applies only to claims for municipal liability.

## BACKGROUND

Universal is "a non-denominational religious organization that champions religious freedom, social justice, and spiritual expression of all kinds." ECF 1, ¶ 2. It has two core tenets. *Id.* at ¶ 12. First, "a person should always strive to do that which is right[.]" *Id.* And second, "all people are naturally endowed with the rights to practices their beliefs, regardless of what those beliefs are, as long as they do not infringe the rights of others and are within the law." *Id.* "To further its mission, [Universal] ordains those who feel called to be a minister of the Church, and many who receive ordination choose to minister by officiating weddings." *Id.* at ¶ 2.

According to the complaint, between August 2018 and February 2021, five Universal ministers called the Department of Court Records, Wills/Orphans' Court Division for Allegheny County. *Id.* at ¶¶ 29-49. Universal claims that each time, the representative who answered the phone stated that Universal ministers could not perform valid marriages. *Id.* at ¶¶ 32, 35, 39-40, 44, 47. As a result of these conversations, each minister felt unable to solemnize marriages and either declined

to perform the marriage ceremony or relocated it outside of Pennsylvania. *Id.* at ¶¶ 33, 36, 41-42, 45, 48-49. The ministers have all refrained from performing marriage ceremonies in Pennsylvania ever since. *Id.*

From this core set of facts, Universal sued Mr. McGeever and Ms. Capozoli, in their official capacities. Universal is seeking declaratory and injunctive relief for its claims, which include alleged violations of the Establishment Clause, the Free Exercise Clause, and the Equal Protection Clause. *Id.* at Prayer for Relief, ¶¶ (a)-(c). Defendants, in turn, now move to dismiss Universal's claims. ECF 18.

## DISCUSSION & ANALYSIS

### I. Universal has alleged a live controversy.

In seeking declaratory and injunctive relief, Universal need only "establish that it has standing to sue, and there exists a controversy between the parties that is not moot and is ripe." *Wawrzynski v. H.J. Heinz Co.*, No. 11-1098, 2012 WL 726500, at *2 (W.D. Pa. Mar. 6, 2012). "These considerations often boil down to the same question." *Id.* (cleaned up). That is, "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality[.]" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

Defendants argue that the Court should dismiss Universal's request for declaratory and injunctive relief because there is no actual controversy between the parties.[1] ECF 19, pp. 4-6. Universal counters that a "case or controversy exists because [it] has suffered constitutionally cognizable injury." ECF 23, p. 6. Specifically, Universal claims that its ministers have been denied "equal treatment" because they have been told, albeit by unidentified employees of Defendants' offices,

---

[1] Universal may seek relief on behalf of its ministers who "would otherwise have standing to sue in their own right." *Free Speech Coal., Inc. v. Att'y Gen. of the United States*, 974 F.3d 408, 421 (3d Cir. 2020).

- 3 -

that "they may not solemnize marriages." *Id.* at p. 7. These statements have "chilled its ministers' expression and religious practice." *Id.*

Accepting Universal's allegations as true, as the Court must at this stage, the Court finds that Universal has alleged sufficiently immediate and real injuries to move forward with the case.

Universal's "burden is low" in alleging sufficient injury. *Hassan v. City of N.Y.*, 804 F.3d 277, 289 (3d. Cir. 2015). All that is required is "an identifiable trifle of harm." *Id.* (cleaned up). In the First Amendment context, "the indignity of being singled out by a government for special burdens on the basis of one's religious calling … is enough to get in the courthouse door." *Id.* (cleaned up). And that's exactly what Universal alleged here: that its ministers are being singled out as "illegitimate" and unworthy of solemnizing marriages in the Commonwealth. According to Universal, the statements made by representatives of Defendants' offices have "dissuade[d] the ministers from performing weddings[.]" *Universal Life Church Monastery Storehouse v. Nabors*, 508 F. Supp. 3d 221, 234 (M.D. Tenn. 2020). Those allegations are enough for now. *Id.* (holding that Universal had standing to challenge Tennessee's marriage licensing statute).

Defendants try to avoid this conclusion by arguing that "Pennsylvania courts have held that the official duty of the County in issuing marriage licenses, does not give the county discretion to interpret statutes, and the marriage license statute does [not] authorize a clerk to exercise any discretion or judgment with respect to its provisions." ECF 19, p. 5 (citing *Dep't of Health v. Hanes*, 78 A.3d 676, 686-88 (Pa. Commw. Ct. 2013)). Thus, Allegheny County "has and continues to issue marriage licenses and record certificates without regard to the officiant signing the certificate." *Id.* Since Allegheny County continues to issue marriage licenses and record

certificates, Defendants argue that any harm to Universal's ministers is "speculative" and not ripe for adjudication. *Id.*

There is a fatal defect with Defendants' argument: it directly contradicts what Allegheny County officials allegedly told Universal's ministers. Universal has pled that its ministers were told, pointedly, that they could not solemnize marriages. For example, one minister was told that Allegheny County doesn't "recognize" Universal or "online" churches. ECF 1, ¶ 32. Another was similarly told that Universal isn't "recognized" and that ministers needed to have a "physical church" to solemnize valid marriages. *Id.* at ¶ 35. That minister specifically asked whether that was the "representative's personal opinion or the official stance of Allegheny County, and the representative stated, 'I represent Allegheny County.'" *Id.* A different minister was called a "cult" person and again told that a "brick-and-mortar church" was needed to solemnize a marriage. *Id.* at ¶¶ 39-40. In short, Universal is alleging that these Allegheny County representatives told its ministers that the County ***was*** interpreting the statute and had determined that Universal did not qualify as a "regularly established church or congregation," as required to solemnize marriages under the statute. The Court cannot, on a Rule 12 motion to dismiss, resolve the factual dispute raised by Defendants' argument.

Finally, Defendants argue that the injuries allegedly suffered by Universal's ministers are "speculative" because the ministers' decisions not to perform marriage ceremonies was their "choice" that was "based on a conjectural concern that the marriage would be deemed invalid." ECF 19, pp. 5-6. The Court disagrees with both the premise of this argument and Defendants' characterization of the injuries.

Whether there is a risk of invalidation of a marriage is unnecessary for there to be a justiciable controversy. There is a justiciable controversy because Universal's ministers were expressly told that they could not solemnize marriage ceremonies—

thereby chilling their First Amendment rights. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

On top of that, as Universal points out, its ministers were not given much of a "choice" in this scenario. There are potential criminal consequences for moving forward with solemnizing marriages in the face of the information the Allegheny County representatives provided to the Universal ministers on the calls. A person is guilty of a second-degree misdemeanor if he or she "makes [or] presents … any record [or] document … knowing it to be false" when the record is "received or kept by[] the government for information or record." 18 Pa. C.S.A. § 4911. A person is also guilty of a second-degree misdemeanor if he or she "makes any written false statement which he does not believe to be true" with "intent to mislead a public servant in performing his official function." 18 Pa. C.S.A. § 4904. As a result, ministers who certify that they performed a valid marriage without the authority to do so may face criminal prosecution. Whether a Universal minister has been prosecuted or threatened with prosecution is beside the point. *Universal Life Church v. Utah*, 189 F. Supp. 2d 1302, 1310 (D. Utah 2002). As another district court explained, "one of the tenets of [Universal] is to act within the law," and one of its ministers "should not be required to violate the law and risk prosecution in order to seek a determination regarding whether he can continue a practice in which he has engaged for many years without fear of prosecution." *Id.* at 1311.

In sum, Universal has alleged that its ministers have lost faith in their ordination, remain hesitant to solemnize marriages, and face the indignity of being singled out based on their religion. ECF 1, ¶¶ 28, 33, 36, 49. These injuries are not

speculative; they have occurred and continue to occur. This case therefore presents a live controversy.[2]

## II. *Monell* does not bar Universal's claims.

Defendants also argue that Universal "has not [pled] a *Monell* claim necessary to establish liability under § 1983." ECF 19, p. 6. Universal contends that "*Monell* does not apply because [it] challenges a state official's implementation of state law." ECF 23, p. 12. As a result, "*Ex parte Young*—rather than *Monell*—provides the proper lens." *Id.* at p. 13. The Court agrees with Universal.

*Monell* provides that "a municipality cannot be held liable solely because it employs a tortfeasor[.]" *Monell v. Dep't of Social Services of N.Y.*, 436 U.S. 658, 691 (1978). That means that under Section 1983, "local governments are responsible only for their own illegal acts. … They are not vicariously liable under [Section] 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (cleaned up). That said, *Monell* "is not pertinent" to a suit against a "state official." *Tunnel v. Off. of Pub. Def.*, 583 F. Supp. 762, 769 (E.D. Pa. 1984). And "[a] county official pursues his duties as a state agent when he is enforcing state law or policy[.]" *Carter v. City of Phila.*, 181 F.3d 339, 352 (3d Cir. 1999) (cleaned up).

Here, Defendants are acting as state officials administering state marriage laws. *See, e.g.*, *Nabors*, 508 F. Supp. 3d at 242; *McGee v. Cole*, 66 F. Supp. 3d 747, 753 n.1 (S.D. W. Va. 2014) ("Here, Defendant Clerks are the officials directly responsible for effectuating the marriage ban and causing Plaintiffs' alleged injury. Accordingly, this action may be a proper *Ex parte Young* suit, by which Plaintiffs can

---

[2] Universal also meets the other requirements to establish standing—causation and redressability. *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014). Defendants caused Universal's injury because they oversee the Wills/Orphan's Court Division, whose employees have allegedly stated that Universal's ministers may not solemnize marriages. An injunction against Defendants would redress Universal's injury because it would enjoin Defendants from chilling or otherwise preventing Universal's ministers from exercising their First Amendment rights.

obtain prospective, equitable relief against the State."). Thus, "[t]his case has not[h]ing to do with a municipality, a municipal policy, or allegedly rogue municipal employees. Rather, it is a case challenging a state law implemented by state official." *Nabors*, 508 F. Supp. 3d at 242. *Monell* therefore does not fit. *Id.*; *Diorio v. Harry*, No. 16-1678, 2020 WL 1140307, at *5 (M.D. Pa. Mar. 9, 2020) ("The holding in *Monell*, however, is restricted to municipalities and local government units and does not extend to states, entities considered arms of the state, nor state officials in their official capacity.").

Defendants argue that Universal is "missing a vital component" of its *Ex parte Young* theory. ECF 24, p. 4. According to Defendants, Universal fails to present "an actual constitutional challenge." *Id.* But that's not correct. Universal is bringing a claim that the relevant statute is unconstitutional as applied by Defendants to Universal's ministers because they have been denied equal treatment. ECF 23, p. 15 ("A live controversy … exists between the parties because Defendants have some connection with the enforcement … and the law is unconstitutional as applied to bar Church ministers from solemnizing marriages." (cleaned up)). Universal can seek prospective relief against Defendants for "acting in violation of … the Constitution" as state officials. *Const. Party of Pa. v. Cortes*, 824 F.3d 386, 396 (3d Cir. 2016).

\* \* \*

For these reasons, this **25th day of January, 2022**, it is hereby **ORDERED** that Defendants' motion to dismiss (ECF 18) is **DENIED.**

BY THE COURT:

/s/ J. Nicholas Ranjan
United States District Judge